# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

BRANDON W. NORDSTEDT,      )
                            )
        Petitioner,         )
                            )
v.                         )     **Case No. 22-CV-0414-GKF-CDL**
                            )
MARGARET GREEN, Warden,[1]   )
                            )
        Respondent.      )

## OPINION AND ORDER

Petitioner Brandon W. Nordstedt petitions for a writ of habeas corpus under 28 U.S.C. §

2254 to challenge the lawfulness of his custody under the criminal judgment entered against him

in Tulsa County District Court Case No. CF-2015-4383.  He claims he was denied his Sixth and

Fourteenth Amendment rights to the assistance of counsel at the trial and appellate levels.

Respondent opposes the petition, asserting that 28 U.S.C. § 2254(d) bars relief.  Having considered

the petition (Dkt. 2), the response (Dkt. 17), the state court record (attachments to Dkts. 7 and 17;

Dkts. 8, 9, 18, 20, 20-2), and applicable law, the Court finds and concludes that 28 U.S.C. § 2254(d)

bars relief and thus denies the petition.

### *BACKGROUND*

## I.  Factual background

Following a trial, a jury found Nordstedt guilty of first-degree murder, in violation of Okla.

Stat. tit. 21, § 701.7(C), for the death of his girlfriend's ten-month-old daughter, E.O.  Dkt. 17-1

---

[1] Nordstedt is incarcerated at the Mack Alford Correctional Center, and Margaret Green is the warden of that facility.  The Court therefore substitutes Margaret Green, Warden, in place of David Louthan as party respondent.  Fed. R. Civ. P. 25(d); Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*.  The Clerk of Court shall note on the record this substitution.

at 2-7.[2]  As recommended by the jury, the trial court sentenced Nordstedt to life imprisonment without the possibility of parole.  *Id.* at 2, 7.  Nordstedt appealed, and the Oklahoma Court of Criminal Appeals ("OCCA") affirmed his conviction and sentence.  *Id.* at 41.  The OCCA described the underlying facts as follows:[3]

> E.O. (the decedent) was born August 20, 2014, and was approximately four (4) months old when her mother, Kaci Loud, began dating [Nordstedt] in December of that year.  By January 2015, they all lived together with Ms. Loud's father in Owasso, Oklahoma.  On July 8, 2015, [Nordstedt], Loud and E.O. moved into their own apartment in Owasso.  The apartment had two bedrooms, one for [Nordstedt] and Ms. Loud and one for E.O.  [Nordstedt], having been previously unemployed, was employed at the time for an oil company and traveled frequently.  Ms. Loud was employed at the YMCA as a child care associate and often took E.O. with her to work.  When she did not, [Nordstedt] would watch her.

> The morning of July 11, Ms. Loud had to be at work by 10:30 a.m.  While making breakfast, she set off the smoke alarm.  [Nordstedt] woke up and helped get the smoke out of the apartment.  E.O. woke up and Ms. Loud changed her diaper and dressed her.  Ms. Loud would later testify that E.O. was acting completely normal and had no injuries except a bruise or cut over her eye.  She had sustained the injury approximately one week earlier when alone with [Nordstedt].  He told Ms. Loud that E.O. had hit her head on the playpen.

> After dressing E.O., Ms. Loud fed her pancakes with syrup and a banana.  E.O. had never had pancakes before and according to Ms. Loud, her appetite was normal and she ate a good breakfast.  Because she was now sticky, Ms. Loud gave E.O. a bath.  During that time, [Nordstedt] cleaned the breakfast dishes and vacuumed the apartment.  After the bath, Ms. Loud dressed E.O. in a onesie with a pink tutu and she played for a while.  Ms. Loud then thought E.O. seemed sleepy, so she made her a bottle and put her down for a nap in the baby bed in her (E.O.'s) room.  Ms. Loud left for work at approximately 10:20 a.m.  Before walking out the door, she looked in on E.O. and thought she seemed not quite asleep.  Ms. Loud

---

[2] The Court's citations refer to the CM/ECF header pagination.

[3] "In reviewing a § 2254 application, '[federal courts] presume that the factual findings of the state court are correct unless the petitioner presents clear and convincing evidence to the contrary.'"  *Frederick v. Quick*, 79 F.4th 1090, 1099 (10th Cir. 2023) (alteration added) (quoting *Frost v. Pryor*, 749 F.3d 1212, 1215 (10th Cir. 2014)), *cert. denied*, 144 S. Ct. 2634 (2024); *see* 28 U.S.C. § 2254(e)(1).  Considering the trial record and the parties' statements of facts, the Court finds that Nordstedt has not shown, by clear and convincing evidence, that the OCCA's factual summary is incorrect.  *See* Dkt. 2 at 19-23; Dkt. 17 at 6-16.

told [Nordstedt] to check on E.O. while she was gone and to take the bottle from her. Ms. Loud later testified that when she left, E.O. was fine.

The YMCA was only a couple of miles from Ms. Loud's apartment and she arrived there at approximately 10:30 a.m. Shortly before 11:00 a.m., Ms. Loud and her co-workers gathered for a meeting. Just prior to the start of the meeting, Ms. Loud received a phone call from [Nordstedt]. He told her to "get home now, [E.O.'s] not breathing." Ms. Loud jumped up and ran out of the room. A co-worker drove her to her apartment. When Ms. Loud got home, she opened the door to find E.O. lying on the floor wearing only a diaper. [Nordstedt] was on the phone with the 911 operator. Ms. Loud thought E.O. was dead and ran into the breezeway screaming. A neighbor, later identified as Gregory Tibbles, ran up to Ms. Loud and she told him her daughter was hurt. Mr. Tibbles ran into the apartment and began performing CPR on E.O. Paramedics arrived soon thereafter.

When Ms. Loud asked [Nordstedt] what happened, he said that when he went to check on E.O., he found her face was splotchy, her tongue was swollen and hanging out of her mouth, and she was having trouble breathing. He thought she had an allergic reaction to the pancakes. By the time paramedics arrived, E.O. was pale, not breathing and cool to the touch. She did not have a pulse. Paramedics were able to insert a tube into her lungs to help E.O. breathe and they got a slight pulse. E.O. had vomited and in cleaning her up, paramedics observed bruises on her face and around her eyes. They did not observe any signs of an allergic reaction. [Nordstedt] explained the bruises were from a fall she had taken in her crib a week earlier. E.O. was initially transported to St. John's Hospital in Owasso. However, her condition was deemed critical and she was transported to the Pediatric Intensive Care Unit at St. Francis Hospital in Tulsa.

While attending to E.O., hospital personnel observed numerous bruises on her body. After approximately two hours, Ms. Loud was informed that E.O.'s injuries were not the result of an accident, that she was brain dead, and would not recover. Ms. Loud was allowed to hold E.O. and in so doing observed bruises on her body that were not there when she left for work that morning. E.O. was placed on life support. Police and Department of Human Services personnel soon arrived to question [Nordstedt], Ms. Loud and family members present. [Nordstedt] stayed in the room with Ms. Loud and E.O. much of the time until he was asked to leave by Ms. Loud so she could be alone with her father and E.O. Sometime after midnight, [Nordstedt] left the hospital, without giving Ms. Loud any explanation, and never returned. He sent Ms. Loud a text message stating that he loved her and E.O. and would do anything to get answers and to prove he did not harm E.O.

The next day, July 12, 2015, after twenty-four hours without brain activity, E.O. was disconnected from the respirator and passed away at approximately 1:08 p.m. An autopsy was conducted the next day and it was determined that E.O.'s cause of death was blunt force trauma and the manner of death was homicide. Investigation into E.O.'s death soon focused on [Nordstedt]. A couple of weeks after E.O.'s death, Ms. Loud tried contacting [Nordstedt] for answers as to what

had happened to E.O.  After numerous calls and texts, [Nordstedt] finally replied that he had told her everything and "this conversation was going nowhere."  Ms. Loud had no further communication with [Nordstedt].

[Nordstedt] was eventually traced to his father's home in Jennings, Oklahoma and then to his sister's home in Hutchinson, Kansas.  On August 20, 2015, he was arrested in Hutchinson by agents of the [United States Marshals Service].  [Nordstedt] was subsequently charged with the child abuse murder of E.O.  Tried by jury, [Nordstedt] was convicted as charged and sentenced to life imprisonment without the possibility of parole.

Dkt. 17-1 at 2-7.

## II.    Procedural background

Nordstedt raised one claim on direct appeal, asserting he was denied his Sixth and Fourteenth Amendment right to the effective assistance of trial counsel.  Dkt. 17-2 at 3.  Nordstedt requested an evidentiary hearing to develop this claim and submitted five affidavits, a forensic report, and medical records to support his request.  Dkt. 20-2; *see* Rule 3.11(B)(3)(b), *Rules of the Oklahoma Court of Criminal Appeals* (governing certain requests for evidentiary hearing).  A majority of the OCCA denied Nordstedt's request for an evidentiary hearing, denied his ineffective assistance of trial counsel claim, and affirmed his conviction and sentence.  Dkt. 17-1 at 8-41.  Two judges dissented and would have remanded the case for an evidentiary hearing.  *Id.* at 43-44.  Nothing in the record indicates that Nordstedt sought further direct review by filing a petition for writ of certiorari in the United States Supreme Court.  Dkts. 2, 17.

In 2020, Nordstedt applied for postconviction relief, under Okla. Stat. tit. 22, § 1080.  Dkts. 17-7, 17-8.  Nordstedt also moved for postconviction DNA testing, under Okla. Stat. tit. 22, § 1373, alleging that forensic testing of E.O.'s blood would reveal the presence of viral, bacterial, or fungal infections, thereby demonstrating an alternative cause of death and his actual innocence.  Dkt. 17-9.  The state district court denied Nordstedt's § 1373 motion following an evidentiary hearing.  Dkt. 17-6 at 24.  Nordstedt filed a notice of postconviction DNA appeal but did not

perfect that appeal. *Id.*; *see also* Dkt. 17-20; Dkt. 17 at 4. He later amended and supplemented his § 1080 application. Dkts. 17-17, 17-18, 17-21. Ultimately, he sought postconviction relief on one claim, asserting that appellate counsel provided constitutionally inadequate representation by failing to raise eight claims on direct appeal. Dkt. 17-18 at 2-3; Dkt. 17-21 at 1. The state district court denied Nordstedt's application for postconviction relief, he filed a postconviction appeal, and the OCCA affirmed the denial of postconviction relief. Dkts. 17-23, 17-24, 17-25.

Nordstedt now seeks federal habeas relief, reasserting his claims that trial counsel and appellate counsel provided constitutionally inadequate representation (grounds one and two). Dkt. 2. Respondent contends 28 U.S.C. § 2254(d) bars relief because Nordstedt has not shown that the OCCA's adjudication of these claims resulted in decisions that are contrary to, or that involve an unreasonable application of, clearly established federal law or that are based on an unreasonable determination of the facts presented in state court proceedings. Dkt. 17.

## DISCUSSION

### I.    Legal standards

A federal court may grant habeas relief to a state prisoner if the prisoner shows that he "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). But provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and the Supreme Court's precedents interpreting those provisions sharply limit a federal court's discretion to issue a writ of habeas corpus to a state prisoner. Relevant here, "[a] state prisoner must exhaust available state remedies before presenting his claim to a federal habeas court." 28

U.S.C. § 2254(b)(1)(A);[4] *Davila v. Davis*, 582 U.S. 521, 527 (2017).  And, when the state court denies a prisoner's federal claim after a merits adjudication, the prisoner must make an initial showing that the state court's adjudication of the claim resulted in a decision that either (1) is "contrary to, or involved an unreasonable application of, clearly established Federal law," 28 U.S.C. § 2254(d)(1), or (2) is "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).  The prisoner "carries the burden of proof" in satisfying these standards.  *Cullen v. Pinholster*, 563 U.S. 170, 181 (2001).[5]

Under § 2254(d)(1), a federal court must determine (1) whether clearly established federal law—i.e., "something akin to [an] on-point holding[]" by the Supreme Court, exists and, if so, (2) whether the prisoner has shown that the state court either (a) decided the federal claim in a manner that is contrary to the Supreme Court's holding or (b) applied that law to the facts of the case in an objectively unreasonable manner.  *House v. Hatch*, 527 F.3d 1010, 1015-19 (10th Cir. 2008).  A state court decision is contrary to clearly established federal law when the state court applies a

---

[4] In most cases, a state prisoner must file a federal habeas petition within one year of the date his or her criminal judgment became final, but the limitations period is tolled while a properly filed application for state postconviction or other collateral review is pending in state court.  28 U.S.C. § 2244(d)(1), (d)(2).  Respondent maintains that Nordstedt did not timely file the petition but acknowledges that this Court previously rejected that argument.  Dkt. 17 at 5; Dkt. 11.  Respondent concedes that Nordstedt exhausted available state remedies.  Dkt. 17 at 5.

[5] *Pinholster* also provides that a prisoner must satisfy these standards on the record presented in state court.  563 U.S. at 181.  Only after a prisoner makes the showings required by § 2254(d) should a federal court consider a prisoner's request for an evidentiary hearing and, even then, a hearing generally is warranted only in exceedingly narrow circumstances.  *Id.* at 185-86; *see also Shinn v. Ramirez*, 596 U.S. 366, 371 (2022) (discussing 28 U.S.C. § 2254(e)(2)'s "narrow exceptions for holding an evidentiary hearing when a prisoner fails to develop the factual basis of a federal claim in state court, and stating, "In all but these extraordinary cases, AEDPA 'bars evidentiary hearings in federal habeas proceedings initiated by state prisoners.'" (quoting *McQuiggin v. Perkins*, 569 U.S. 383, 395 (2013))).  For the reasons stated in discussion sections II.B. and II.C., *infra*, the Court finds that Nordstedt has not shown that he can satisfy § 2254(d)'s standards on the record presented in state court.  The Court therefore denies his request for an evidentiary hearing, as asserted in his petition.  Dkt. 2 at 91.

legal rule that is "diametrically different" from the rule established by the Supreme Court or when the state court confronts a case involving application of the same legal rule to the identical fact pattern as a case previously decided by the Supreme Court and the state court reaches a different result. *Id.* at 1018; *see also Williams v. Taylor*, 529 U.S. 362, 406 (2000) (explaining that "a run-of-the-mill state-court decision applying the correct legal rule from our cases to the facts of a prisoner's case would not fit comfortably within § 2254(d)(1)'s 'contrary to' clause"). When the state court applies the correct governing legal principles set forth in clearly established federal law, the only question under § 2254(d)(1) is whether the state court's decision involves an objectively unreasonable application of those legal principles. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision is objectively unreasonable only if it "is so obviously wrong that its error lies 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).

Under § 2254(d)(2), a federal court must determine whether the prisoner has shown that the state court's decision on a federal claim is based on an unreasonable determination of the facts presented in state court. *House*, 527 F.3d at 1015, 1019. "[A] factual finding may be unreasonable under § 2254(d)(2) only if the state court 'plainly misapprehended or misstated the record' and the 'misapprehension goes to a material factual issue that is central to the petitioner's claim.'" *Frederick*, 79 F.4th at 1104 (quoting *Menzies v. Powell*, 52 F.4th 1178, 1195 (10th Cir. 2022)). In sum, "[t]he standard for determining whether the state court's decision was based on an unreasonable determination of the facts 'is a restrictive one.'" *Id.* (quoting *Grant v. Trammell*, 727 F.3d 1006, 1024 (10th Cir. 2013)). A federal court "must defer to the state court's factual determinations so long as 'reasonable minds reviewing the record might disagree about the finding in question.'" *Smith v. Duckworth*, 824 F.3d 1233, 1241 (10th Cir. 2016) (quoting *Brumfield v.*

7

*Cain*, 576 U.S. 305, 314 (2015)); *see also Grant*, 727 F.3d at 1024 (noting that "an imperfect or even an incorrect determination of the facts isn't enough for purposes of § 2254(d)(2)").

Even if a prisoner meets his burden to satisfy § 2254(d)'s preconditions to relief, the prisoner is not entitled to federal habeas relief. *See Brown v. Davenport*, 596 U.S. 118, 134 (2022) ("While AEDPA announced certain new conditions to relief, it did not guarantee relief upon their satisfaction."). Rather, the federal court must review the claim de novo and, if the court finds a constitutional error, "must assess [its] prejudicial impact . . . under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619 (1993)]." *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007). Under the *Brecht* standard, a federal court will grant habeas relief only if the court "is in grave doubt as to the harmlessness of an error that affects substantial rights." *O'Neal v. McAninch*, 513 U.S. 432, 445 (1995). Ultimately, to obtain federal habeas relief, the prisoner "must . . . persuade a federal habeas court that 'law and justice require' relief." *Davenport*, 596 U.S. at 134 (quoting 28 U.S.C. § 2243).

With these standards in mind, the Court considers Nordstedt's claims.

## II.    Ineffective assistance of counsel

Nordstedt claims trial counsel and appellate counsel provided constitutionally inadequate representation, thereby violating his Sixth and Fourteenth Amendment rights to counsel. Dkt. 2 at 2-5. The Court first discusses the clearly established federal law governing these claims, then considers Nordstedt's specific allegations of ineffectiveness and his arguments that the OCCA's decisions on these claims are objectively unreasonable.

### A.    Clearly established federal law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall . . . have the Assistance of Counsel for his defence." U.S. Const. Amend. 6. This provision of the

Sixth Amendment, applicable to the states through the Fourteenth Amendment, provides a criminal defendant with the right to the effective assistance of counsel. *See McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) ("It has long been recognized that the right to counsel is the right to the effective assistance of counsel."); *Gideon v. Wainwright*, 372 U.S. 335, 341-44 (1963) (reaffirming that the Sixth Amendment right to counsel is applicable to the states through the Fourteenth Amendment's Due Process Clause). To establish that an attorney provided constitutionally inadequate representation, a defendant must show: (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984).

The standard for assessing counsel's performance is "highly deferential" because "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant." *Id.* at 688-89. A reviewing court's task is not to "second-guess counsel's assistance after conviction or adverse sentence" with the benefit of "hindsight." *Id.* at 689. Rather, a reviewing "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 689-90.

But "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. For that reason, "actual ineffectiveness claims alleging a deficiency in attorney performance are subject to a general requirement that the defendant affirmatively prove prejudice." *Id.* at 693. On

this point, "[i]t is not enough for the defendant so show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* Instead, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

In framing this two-part inquiry, the *Strickland* Court did "not establish mechanical rules." *Id.* at 696. Rather, the *Strickland* Court emphasized that while the two-part inquiry "should guide" courts adjudicating ineffective assistance of counsel claims, "the ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Id.* The *Strickland* Court also encouraged courts to consider resolving these claims without addressing both components of the two-part inquiry because

> there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

*Id.* at 697; *see Frederick*, 79 F.4th at 1105 ("The court may address the two *Strickland* prongs in either order and need not address both if the defendant has failed to satisfy one.").

Reviewing courts also apply *Strickland*'s deferential framework to evaluate ineffective assistance of appellate counsel claims alleging deficiencies in appellate briefing. *Smith v. Robbins*, 528 U.S. 259, 285 (2000). Notably, though the Constitution does not require appellate counsel "to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Jones v. Barnes*, 463 U.S. 745, 751 (1983); *see Robbins*, 528 U.S. at 288 (describing *Barnes* as holding "that appellate counsel who files a merits brief need not

10

(and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal"). "Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent." *Robbins*, 528 U.S. at 288. Ordinarily, in evaluating whether appellate counsel performed deficiently by omitting a particular claim the reviewing court must examine the merits of the omitted claim. *Frederick*, 79 F.4th at 1105. And, even if a defendant shows that appellate counsel performed deficiently by omitting a particular claim on appeal, the reviewing court must determine whether the defendant also has shown that counsel's omission of that claim resulted in prejudice. *Robbins*, 528 U.S. at 288-89 (explaining that a defendant "must satisfy both prongs of the *Strickland* test tin order to prevail on his claim of ineffective assistance of appellate counsel"). In this context, a defendant must show there is a reasonable probability that, but for appellate counsel's omission of a particular claim, the defendant "would have prevailed on his appeal." *Id.* at 285, 288-89; *accord Frederick*, 79 F.4th at 1105.

On federal habeas review, "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is . . . difficult" because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (cleaned up). The question for a federal habeas court "is not whether counsel's actions were reasonable"; rather, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*; *see also Cone*, 535 U.S. at 699 ("[U]nder § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, he must

show that the [state court] applied *Strickland* to the facts of his case in an objectively unreasonable manner.").

## B.     Ground one:  ineffective assistance of trial counsel

Nordstedt contends, as he did on direct appeal, that trial counsel performed deficiently and prejudicially by failing to retain an expert witness to counter the medical evidence presented by the State's expert witnesses, failing to effectively cross-examine certain witnesses, and failing to object to false and prejudicial evidence.  Dkt. 2 at 2-57;  Dkt. 17-2 at 22.  He specifically contends trial counsel (1) failed to retain and present a critical, available defense witness, Janice Ophoven, M.D., a pediatric forensic pathologist who would have testified that "the medical evidence does not support child abuse in this case" and would have identified "obvious alternative explanations" for E.O.'s death, Dkt. 2 at 23-24, 40-42; (2) failed to adequately investigate the possibility of hiring an expert witness and thus failed to hire any expert to defend against "harmful expert testimony" presented by the State through Drs. Niblo and Baxter, *id.* at 25-50; (3) failed to adequately cross-examine critical witnesses by (a) failing to utilize available medical records and (b) failing to elicit testimony informing the jury that contemporary scientific and medical research did not support the State's theory that E.O. died from shaken baby syndrome/abusive head trauma, *id.* at 33, 41-50; and (4) failed to object when the prosecutor and Ms. Loud mistakenly referred to E.O.'s anal injuries as "genital" injuries,[6] *id.* at 53-54.

### 1.     OCCA decision

Applying *Strickland* and the OCCA's standard governing a request for an evidentiary hearing, the latter of which requires an appellant to show "by clear and convincing there is a strong

---

[6] Dr. Niblo testified she observed "multiple anal tears" on autopsy that were consistent with blunt force trauma.  Dkt. 8-3 at 64-65.

possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence," the OCCA denied Nordstedt's request for an evidentiary hearing and denied his claim that trial counsel was ineffective. Dkt. 17-1 at 7-41.[7] In so doing, the OCCA identified principles from *Strickland* that informed its analysis, discussed the medical evidence that was presented at trial, considered the evidence Nordstedt proffered to support his request for an evidentiary hearing, and addressed Nordstedt's allegations regarding trial counsel's allegedly deficient performance. *Id.*

### a.     Expert-witness failures

First, the OCCA addressed counsel's arguments regarding trial counsel's alleged deficiencies related to investigating the possibility of hiring an expert witness and presenting expert witness testimony at trial. Relying on affidavits Nordstedt submitted with his application for an evidentiary hearing, the OCCA found trial counsel consulted two experts before trial, Drs. Plunkett and Beamon; that Dr. Plunkett was unable to review Nordstedt's case due to health reasons; and that Dr. Beamon declined to testify because he was a forensic psychiatrist, not an expert in forensic pathology. *Id.* at 16-21. Based on Dr. Beamon's affidavit, the OCCA further found that Dr. Beamon reviewed E.O.'s medical records, informed trial counsel he could not testify as an expert on autopsies, told counsel "it would be difficult to overcome the State's Shaken Baby Syndrome theory," opined that "as to [E.O.'s] retinal detachment and vitreous hemorrhage, there was no other explanation for those injuries other than blunt force trauma"; and "offered to assist

---

[7] *See Lott v. Trammell*, 705 F.3d 1167, 1213 (10th Cir. 2013) (stating, "it is plain to us, as a matter of federal law, that any denial of a request for an evidentiary hearing on the issue of ineffective assistance of counsel filed pursuant to OCCA Rule 3.11 . . . operates as an adjudication on the merits of the *Strickland* claim and is therefore entitled to deference under § 2254(d)(1)" and explaining that deference is warranted regardless of whether "the OCCA summarily disposes of a defendant's Rule 3.11 application without discussing the non-record evidence").

counsel in finding appropriate experts but counsel never took him up on the offer." *Id.* at 20-21. The OCCA noted that "*Strickland* does not enact Newton's third law for the presentation of evidence, requiring for every prosecution expert an equal and opposite expert from the defense," and reasoned that, even without presenting an expert witness for the defense, trial counsel's cross-examination of the State's medical experts was sufficient to expose weaknesses in the State's medical evidence. *Id.* at 21-24 (quoting *Richter*, 562 U.S. at 111). The OCCA reasoned:

> [B]y the time of trial, defense counsel had contacted two expert witnesses, one of whom declined to help with the defense and one who agreed with the State's experts that the decedent died as a result of blunt force trauma, that her death was not the result of any pre-existing condition or illness, and that it would be difficult to find experts that contradicted the State's expert testimony. This Court will not hold counsel ineffective for failing to investigate every possible avenue of defense; counsel may make strategic choices based on less than complete investigation, which will be considered reasonable to the extent that reasonable professional judgment supports the limitations on investigation.

*Id.* at 23-24. The OCCA concluded that Nordstedt did not "present clear and convincing evidence that there is a strong possibility that counsel was ineffective for failing to further investigate and present expert testimony to rebut the State's medical experts regarding the cause of [E.O.'s] injuries and ultimate death. Dkt. 17-1 at 26.

Next, the OCCA considered Nordstedt's specific allegation that trial counsel should have retained and presented testimony from Dr. Ophoven, a pediatric forensic pathologist board certified in pathology and forensic pathology. *Id.* at 26-27. The OCCA noted that Dr. Ophoven's affidavit demonstrated her disagreement "with the diagnosis that [E.O.] died as a result of abusive head trauma" and her view "that there were alternative theories of the cause of death that were not considered in the case." *Id.* at 27. The OCCA found, however, that "on several points" Dr. Ophoven's affidavit "misstated the evidence presented at trial"; did not "acknowledge the observations and opinions of Dr. Baxter" and a second witness who testified about "multiple lacerations" in E.O.'s anal area; and repeatedly concluded "that choking, vomiting and prolonged

14

resuscitation caused a lack of oxygen to [E.O.'s] brain despite trial testimony that none of these events occurred." *Id.* at 27-30. In addition, the OCCA found that Dr. Ophoven offered "no explanation for the majority of the exterior bruises and abrasions on E.O.'s body" and that her *curriculum vitae* "raise[d] questions about her credibility" that "would have been thoroughly exposed on cross-examination." *Id.* at 30. The OCCA concluded,

> [i]n light of the inconsistencies listed above with the testimony presented at trial, as well as other inconsistencies not detailed here, and the potential exposure on cross-examination of her history as a paid defense witness to rebut theories of abusive head trauma, we find Dr. Ophoven's affidavit fails to present clear and convincing evidence that there is a strong possibility trial counsel was ineffective for failing to investigate and present her testimony regarding alternate causes for [E.O.'s] injuries and cause of death.

*Id.* at 31. The OCCA further concluded, based on its review of all information Nordstedt submitted with his application for an evidentiary hearing, that he had not shown, "by clear and convincing evidence a strong possibility that counsel was ineffective for failing to present medical expert testimony" and that Nordstedt thus "failed to meet the more stringent test of ineffectiveness set forth in *Strickland*. *Id.*

The OCCA also considered Nordstedt's argument that, without an expert witness countering the State's medical evidence, trial counsel failed to present a coherent defense theory. The OCCA reasoned:

> In light of the evidence, the only choices for [E.O.'s] abuser were her mother, Ms. Loud, or [Nordstedt]. Counsel opted to attack the State's theory that he was the abuser by showing that regardless of the medical evidence, he did not have the opportunity to injure [E.O.]. "When defense counsel does not have a solid case, the best strategy can be to say that there is too much doubt about the State's theory for a jury to convict." [*Richter*], 562 U.S. at 111, 131 S. Ct. at 791.

*Id.* at 24. The OCCA noted that trial counsel "point[ed] out for the jury that the State's experts could not determine exactly how or when [E.O.] was injured" and "attempted to establish a timeline where Ms. Loud could have inflicted the injuries on [E.O.] before she left for work that

morning." *Id.*   The OCCA cited Nordstedt's testimony that "Ms. Loud was extremely selfish, immature and mentally unstable – having threatened to kill herself on at least two occasions," that Ms. Loud made "constant demands for [Nordstedt's] attention," and that he "believed E.O. sustained a brain injury, but that he did not injure her." *Id.* at 24-25.   The OCCA also found that trial counsel "reinforced" this theory through closing argument and "told the jury the State had no direct evidence" that Nordstedt injured E.O. and that "the State had rushed to judgment in naming the abuser." *Id.* at 25.   The OCCA stated,

> By questioning the conclusion of the State's experts and their inability to determine exactly when and how [E.O.] was injured, asserting that Ms. Loud injured [her], arguing that the State's accusation of [Nordstedt] was a rush to judgment and [offering Nordstedt's] assertion of his innocence on the witness stand, defense counsel was clearly trying to establish a reasonable doubt in the minds of the jury regarding when [E.O.] was injured and who caused those injuries.

*Id.* at 32.   Citing *Strickland*, the OCCA concluded that, considering the evidence, "this was a reasonable trial strategy" even if it ultimately proved unsuccessful.  *Id.* at 25-26, 32-33; *see Strickland*, 466 U.S. at 689-90 ("There are countless ways to provide effective assistance in any given case.   Even the best criminal defense attorneys would not defend a particular client in the same way.").

The OCCA also noted that Nordstedt relied, in part, on *Hinton v. Alabama*, 571 U.S. 263 (2014), "to argue that counsel's decision to forego expert testimony in this case was the result of an incomplete investigation of the facts." *Id.* at 33.   The OCCA nonetheless distinguished *Hinton* on its facts, reasoning that evidence in that case directly linked the defendant in that case to a murder and defense counsel in that case hired an unqualified expert to testify at trial based on defense counsel's fundamental misunderstanding of Alabama law governing access to funds for retaining an expert witness.  *Id.* at 33-34.   The OCCA noted that Nordstedt's case did not involve any similar "concern for funding an expert" and "the medical evidence of abusive head trauma

16

does not show who injured E.O. and does not directly link [Nordstedt] to her injuries and death."

*Id.* at 34.  Ultimately, the OCCA concluded:

> Here, in light of the State's evidence, trial counsel made a reasonable strategic decision to present a defense which did not require medical testimony.  Viewing counsel's conduct on the facts as seen at the time of trial, we find [Nordstedt] has failed to overcome the presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  Defense counsel vigorously represented [Nordstedt].  It is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy.

*Id.* at 34-35 (citing *Richter*, 562 U.S. at 111).

### b.    Cross-examination failures

The OCCA next considered Nordstedt's allegation that trial counsel ineffectively cross-examined certain witnesses by failing to utilize E.O.'s medical records.  *Id.* at 35.  Considering the medical records Nordstedt submitted to support his request for an evidentiary hearing and evidence presented at trial, the OCCA found:  (1) that trial counsel was not ineffective for failing to adequately utilize a progress note from Dr. Hebertson because Nordstedt's "argument that E.O. was somehow developmentally delayed or unhealthy at the time of her death is not supported by the record or Dr. Hebertson's report"; (2) that trial counsel was not ineffective for failing to utilize Dr. Jaiswal's report to impeach certain witnesses with questions about E.O. having a bleeding disorder because "[n]othing" in Dr. Jaiswal's "report indicates E.O. suffered from a blood clotting disorder" and several witnesses testified at trial "there was no evidence of E.O. having a pre-existing blood clotting disorder"; and (3) that trial counsel was not ineffective for failing to impeach two nurses, Ms. Farris and Ms. Brown, with their progress notes because "[a]ny attempt to impeach the witnesses . . . would have served no other purpose than to call attention to [Nordstedt's] statements," overheard by and introduced at trial through the testimony of Farris and

Brown, that he would "never hurt [E.O.] again" and asking God to "forgive [him] and heal her."

*Id.* at 35-39.

Ultimately, the OCCA concluded,

> Having thoroughly reviewed [Nordstedt's] motion for evidentiary hearing and
> accompanying attachments, we find he has failed to present clear and convincing
> evidence that there is a strong possibility trial counsel was ineffective for failing to
> cross-examine certain witnesses as discussed above. Therefore, the motion for
> evidentiary hearing on this ground is denied. Further, [Nordstedt] has failed to meet
> the more stringent test of ineffectiveness set forth in *Strickland*.

*Id.* at 39.

### c.    Objection failure

Lastly, the OCCA considered Nordstedt's argument that trial counsel was ineffective for

failing to object when Ms. Loud and the prosecutor referred to E.O.'s anal injuries as "genital"

injuries. Dkt. 17-1 at 39-40. The OCCA rejected that argument, reasoning:

> During the examination of Ms. Loud, both Ms. Loud and the prosecutor referred to
> the injuries to E.O.'s genitals. However, the evidence showed the injury was to
> E.O.'s anus. While the anus is generally not considered a part of the genitals, any
> misstatement by the prosecutor or Ms. Loud was minor. Dr. Niblo and Dr. Baxter
> both properly identified the area and the injuries. The prosecutor's misstatement
> did not affect the outcome of the trial and counsel's failure to raise any objection
> did not prejudice [Nordstedt] as it also did not impact the outcome of the trial.

*Id.* at 39-40.

### d.    OCCA's conclusion

The OCCA summarized its conclusion on Nordstedt's ineffective assistance of trial counsel

claim, stating:

> After thoroughly reviewing the record, and [Nordstedt's] allegations of
> ineffectiveness, we have considered counsel's challenged conduct on the facts of
> the case as viewed at the time and have asked if the conduct was professionally
> unreasonable and, if so, whether the error affected the jury's judgment. *Frederick*,
> 2017 OK CR 12, ¶ 201, 400 P.3d at 832. Defense counsel's performance in this
> case did not "so undermine the proper functioning of the adversarial process that
> the trial cannot be relied on as having produced a just result." *Id.*, *quoting*
> *Strickland*, 466 U.S. at 686, 104 S. Ct. at 2064. [Nordstedt] has failed to meet his

burden of showing a reasonable probability that, but for any unprofessional errors by counsel, the result of the trial would have been different. Accordingly, we find that [Nordstedt] was not denied the effective assistance of counsel.

*Id.* at 40-41.

### 2.    Application of § 2254(d)

Because the OCCA applied *Strickland* in rejecting his ineffective assistance of trial counsel claim, Nordstedt must show that the OCCA's adjudication of that claim resulted in a decision that either (1) involves an unreasonable application of *Strickland*'s legal principles to the facts of his case or (2) is based on an unreasonable determination of the facts presented in state court. 28 U.S.C. § 2254(d). In his attempt to satisfy these standards, Nordstedt essentially repeats the arguments he presented in his state appellate brief and argues that the record supports a finding that trial counsel's ineffectiveness resulted in prejudice because "[v]arious witnesses praised" his parenting skills, there was no evidence of a history of abuse, no one witnessed "the alleged abuse," and "without an expert, the defense had no case." Dkt. 2 at 23-56. Nordstedt contends that trial counsel's "failure to prepare to show up for the battle [of experts] in [his] case should undermine this Court's confidence in the outcome," then states,

> [Nordstedt] argues that the OCCA's resolution of these facts alleged in his direct appeal "was contrary to, or involved an unreasonable application of, clearly established federal law," 28 U.S.C. § 2254(d)(1) and involved an "unreasonable determination of the facts" in light of the evidence. *See* § 2254(d)(2). [Nordstedt] argues the State Court's determination there was no prejudice is objectively unreasonable considering the facts because it is clear Trial Counsel's deficient performance resulted in a miscarriage of justice in violation of the Sixth Amendment.

*Id.* at 56-57.[8]

Respondent contends this Court should deny relief as to ground one based on inadequate briefing because Nordstedt's just cited, "boilerplate" references to the standards in § 2254(d) "fail[] to provide . . . any meaningful argument" that he can satisfy those standards. Dkt. 17 at 23-26. Respondent further contends that Nordstedt's "many pages of arguments on this issue read entirely as if this issue were subject to *de novo* review and at times even appear to be a repeat of arguments made to the OCCA on direct appeal without accounting for the difference in posture." *Id.* at 25. Alternatively, Respondent contends that even if Nordstedt has sufficiently attempted to engage with the OCCA's decision, he has not shown that the OCCA's adjudication of his ineffective assistance of trial counsel claim involves an unreasonable application of clearly established federal law or is based on an unreasonable determination of the facts. *Id.* at 27-59. The Court agrees with both contentions.

Nordstedt's "broad, conclusory" assertion that the OCCA's decision is unreasonable under both § 2254(d)(1) and (d)(2), unaccompanied by any discernible supporting argument, is "insufficient to carry [his] burden" to show that § 2254(d) does not bar relief. Dkt. 2 at 56-57. *Meek v. Martin*, 74 F.4th 1223, 1267 (10th Cir. 2023). Nordstedt's petition largely reads like an appellate brief, does not "engage with" the OCCA's legal analysis, and "does not meaningfully contest" any of the OCCA's factual determinations. *See id.* at 1266-67; Dkt. 2, generally. And, as Respondent states, "this Court is under 'no obligation to fill in the blanks of a litigant's

---

[8] In the "standard of review" section of the petition, Nordstedt discusses § 2254(d), cites an out-of-circuit case, and asserts that "[t]he OCCA's determination under a timely AEDPA analysis involves an unreasonable determination of Supreme Court precedents because the State Court's determination rests partly on thin air." Dkt. 2 at 17-18. To the extent Nordstedt suggests there is no reasonable basis for the OCCA's decision on his ineffective of trial counsel claim because that decision "rests on thin air," the Court finds, on the record presented, that Nordstedt's undeveloped assertion is insufficient to satisfy his burden under § 2254(d).

inadequate brief.'" Dkt. 17 at 26 (quoting *Meek*, 74 F.4th at 1267-68). If Nordstedt appeared in this proceeding without counsel, the Court would be required to liberally construe his petition. *Childers v. Crow*, 1 F.4th 792, 798 (10th Cir. 2021). Even then, this Court could not "rewrite" his petition to consider claims not fairly presented therein. *Id.* But Nordstedt appears through counsel. And no rule requires a federal court to liberally construe a pleading drafted by an attorney. *See, e.g.*, *United States v. Sineneng-Smith*, 590 U.S. 371, 375-76 (2020) (stating, "as a general rule, our system is designed around the premise that parties represented by competent counsel know what is best for them, and are responsible for advancing the facts and argument entitling them to relief" (cleaned up)).

Even if this Court were to disregard Nordstedt's briefing inadequacies, the Court further agrees with Respondent that Nordstedt has not shown he can overcome § 2254(d)'s bar to relitigation of the ineffective assistance of trial counsel claim. The OCCA's decision reflects that it applied *Strickland*, examined the trial record, considered the extra-record materials Nordstedt submitted with his application for evidentiary hearing, and thoroughly addressed each of his arguments regarding trial counsel's alleged ineffectiveness. Dkt. 17-1. At most, Nordstedt appears to argue that the OCCA should have found trial counsel ineffective because "other courts," including the OCCA, previously have found attorneys ineffective for failing to "adequately address scientific issues," failing to adequately investigate the possibility of hiring an expert witness, or failing to hire an expert witness in child abuse cases. Dkt. 2 at 44, 50-53, 55-56. But the cases he cites are from the United States Court of Appeals for the Sixth Circuit, the OCCA, and various other state courts. *Id.* Section 2254(d) directs federal courts to consider whether state courts have reasonably applied Supreme Court precedent in adjudicating a federal claim, not whether a state court decision is consistent with decisions from other state courts or circuit courts applying that

same precedent.  28 U.S.C. § 2254(d); *House*, 527 F.3d at 1015.  Here, the controlling precedent is *Strickland* and because *Strickland* provides a general rule of application, state courts have more leeway in applying it.  *Kayer*, 592 U.S. at 119.  This necessarily results in a "substantial" range of cases with different outcomes, each of which may be objectively reasonable considering the particular facts of each case.  *See Richter*, 562 U.S. at 105 ("The *Strickland* standard is a general one, so the range of reasonable applications is substantial.").  To the extent Nordstedt argues the OCCA's decision is objectively unreasonable because other courts in other cases have granted relief under *Strickland*, that argument is unavailing and falls far short of meeting his burden to satisfy § 2254(d)'s demanding standards.

On the record presented, the Court finds and concludes that Nordstedt has not shown that the OCCA had no reasonable basis to reject his claim that trial counsel provided constitutionally inadequate representation.  The Court thus denies the petition as to ground one.

### C.    Ground two:  ineffective assistance of appellate counsel

Nordstedt claims, as he did in his application for postconviction relief, that appellate counsel provided constitutionally inadequate representation by failing to raise certain claims.  Dkt. 2 at 57-88.[9]  He alleges appellate counsel should have raised the following claims:  (1) a Sixth and Fourteenth Amendment claim alleging trial counsel was ineffective for failing to call John S. Marouk, D.O. to testify as an expert witness at trial, Dkt. 2 at 58-59; (2) a Fourteenth Amendment due process claim alleging the prosecutor engaged in "a willful suppression of evidence—CT scans and X-rays—which violated *Brady v. Maryland*, 373 U.S. 83 (1963)," *id.* at 59-60; (3) a Sixth Amendment confrontation clause claim "arising from Dr. Michael Baxter's testimony as an expert witness because Dr. Baxter's testimony relied upon hearsay [given that] he never physically

---

[9] Nordstedt's habeas counsel represented him in state postconviction proceedings.

examined E.O.," *id.* at 60-62; (4) a Sixth and Fourteenth Amendment claim alleging trial counsel was ineffective "for not requesting a *Daubert* hearing to determine the novel concept giving Dr. Baxter authority to testify without having examined E.O. which resulted in a denial of fundamental fairness," *id.* at 63-66; (5) a Fourteenth Amendment due process claim alleging "prosecutorial misconduct that resulted from Dr. Cheryl Niblo's testimony which was unreliable, misleading and inconsistent scientifically with her autopsy report thus resulting in a denial of fundamental fairness," *id.* at 66-72; (6) a Sixth Amendment claim alleging "denial of a fair trial by the use of a demonstrative aid labeled 'SBS & Ribs,' introduced by Dr. Baxter" over Nordstedt's objection, *id.* at 72; and (7) a Fourteenth Amendment due process claim alleging prosecutorial misconduct based on the prosecutor's misstatement of "facts that the prosecutor had no reasonable belief that his statements were true which bolstered the State's case that was predicated upon a material falsehood 'child abuse murder,'" specifically the prosecutor's statement that E.O. had no bleeding disorder, *id.* at 73-74.[10]

### 1. State court decisions

Applying *Strickland* and examining the merits of each claim Nordstedt identified as wrongly omitted from his appeal by appellate counsel, the state district court found no merit to any of the claims and thus found that appellate counsel was not ineffective for omitting them. Dkt. 17-23 at 2-23. The state district court reasoned that Nordstedt "fail[ed] to establish ineffective assistance of appellate counsel because the Sixth Amendment does not call for counsel to raise claims which are unsupported by the record, contrary to longstanding case law, or both." *Id.* at 2.

---

[10] In his supplemental application for postconviction relief, Nordstedt also claimed appellate counsel was ineffective for failing to raise a claim alleging the state district court lacked jurisdiction to prosecute him for a crime he committed in "Indian lands." Dkt. 17-21. He does not reassert that sub-claim in his petition. Dkt. 2, generally.

The state district court also cited *Robbins* for the proposition "that appellate attorneys are *not* required to raise all arguable issues, all non-frivolous claims, but only expected to select claims most likely to succeed on appeal." *Id.* at 5.  The state district court then discussed, in detail, why each omitted claim lacked merit and why Nordstedt did not establish the requisite prejudice to support his claim that appellate counsel was ineffective for failing to raise those claims. *Id.* at 6-23.

On postconviction appeal, the OCCA likewise acknowledged that *Strickland* guides the analysis of ineffective assistance of appellate counsel claims and that a reviewing court "must look to the merits of the issues that appellate counsel failed to raise." Dkt. 17-25 at 3-4.  The OCCA affirmed the denial of postconviction relief, reasoning that the state district court "correctly determined [Nordstedt] never established prejudice on any of the various omitted claims" and rightly "found the claims so meritless that no reasonable appellate practitioner would have raised them on direct appeal." *Id.* at 4.

### 2.    Application of § 2254(d)

Like his arguments in support of ground one, Nordstedt's arguments in support of ground two provide little to no clue as to how he can satisfy § 2254(d)'s standards.  He cites *Strickland*'s two-part inquiry and states that the propositions he raises on collateral review "resulted in the OCCA making an objectively unreasonable determination of Supreme Court precedence and an unreasonable determination of the facts, given the evidence." Dkt. 2 at 58.  Nordstedt then restates each claim that appellate counsel omitted, and that the state district court found meritless, without any apparent references to the state district court's assessment of those claims or any apparent arguments as to why it was legally or factually unreasonable for the OCCA to agree with that assessment. *Id.* at 58-74.  Following his restatement of these claims, Nordstedt acknowledges that

the "focus of a *Strickland* inquiry regarding performance of appellate counsel is upon the merits of the omitted issue" and states that "no test that ignores the merits of the omitted claim in conducting it ineffective assistance of appellate counsel analysis comports with federal law." *Id.* at 74. Next, Nordstedt discusses scholarly articles critical of the term "Shaken Baby Syndrome," discusses several state court cases involving overturned child abuse convictions, and one case from the United States Court of Appeals for the Seventh Circuit purportedly "highlight[ing] the shift in change in the medical community's perspective of the [Shaken Baby Syndrome] hypothesis" and holding "that police violated a defendant's constitutional rights when they coerced him into

confessing that his 'gentle' and 'innocently intended' shaking caused an infant's death." *Id.* 74-83.[11]

Like Respondent, the Court struggles to discern any coherent argument from Nordstedt's petition to support his apparent position that the OCCA had no reasonable basis to reject his ineffective assistance of appellate counsel claim. Dkt. 17 at 61, 63; *see* Dkt. 2 at 57-83. However, to the extent Nordstedt might be suggesting that either the state district court or the OCCA unreasonably applied *Strickland* by failing to consider the merits of his omitted claims, the record

---

[11] Nordstedt also notes he sought forensic testing of E.O.'s blood and asserts "the State Court refused to address the request at all on the merit or otherwise." Dkt. 2 at 83. Nordstedt then discusses scientific and legal literature related to DNA testing and exoneration and appears to assert that he can overcome any procedural bars because he is actually innocent. *Id.* at 83-90; *see Perkins*, 569 U.S. at 392 ("[A] credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief."). At the end of this section of the petition, Nordstedt states that he "argued that DNA testing in this case would present new evidence to support [his] claims that he did not commit the offense he was convicted of, but the State Court ignored [his] request under the Fourteenth Amendment thus demonstrating an objectively unreasonable determination of the facts in light of the evidence." *Id.* at 90. This section of the petition is perplexing for several reasons. First, the record refutes Nordstedt's assertion that the state district court "ignored" his request for postconviction DNA testing of E.O.'s blood. Instead, the state district court denied that request following an evidentiary hearing where Nordstedt appeared via video and was represented by postconviction counsel who also appears as Nordstedt's counsel in this habeas proceeding. Dkt. 17-6 at 24. And the issue of DNA testing is unrelated to either ground for relief he identifies in the petition. As discussed, Nordstedt identifies only two grounds for relief in the petition—ineffective assistance of trial counsel and ineffective assistance of appellate counsel. Neither claim is procedurally barred. Rather, both are subject to review under § 2254(d). To the extent Nordstedt invokes *Perkins*'s miscarriage of justice exception, the Court cannot fathom why he does so. Further, to the extent Nordstedt suggests the state district court violated the Fourteenth Amendment by denying his motion for DNA testing, he states no cognizable federal habeas claim "because the constitutional error he raises focuses only on the State's post-conviction remedy and not the judgment which provides the basis for his incarceration." *Sellers v. Ward*, 135 F.3d 1333, 1339 (10th Cir. 1998); *see also Sanders v. Crow*, 791 F. App'x 773, 774-75 (10th Cir. 2020) (noting that petitioner's state-law challenge to state court's adjudication of his application for DNA testing was not cognizable on habeas review). Similarly, to the extent he asserts a freestanding actual innocence claim, that claim too is not a cognizable habeas claim. *Farrar v. Raemisch*, 924 F.3d 1126, 1131 (10th Cir. 2019).

26

wholly refutes that suggestion.  Dkts. 17-23, 17-25.  As previously discussed, the state district court carefully explained why appellate counsel was not constitutionally ineffective for omitting any of the seven claims Nordstedt identifies in the petition.  Dkt. 17-23.  The OCCA effectively adopted the state district court's assessment of those claims when it agreed with the state district court's conclusions  Dkt. 17-25.  And Nordstedt does not engage with, or even mention, the state district court's analysis of those claims or attempt to explain why the OCCA's agreement with that analysis is objectively unreasonable either as a matter of law or a matter of fact.  Dkt. 2 at 57-83.  It is not this Court's job to make those arguments for him.  *Sineneng-Smith*, 590 U.S. at 375-76; *Meek*, 74 F.4th at 1266-68; *Childers*, 1 F.4th at 798.

On consideration of the entire record and the arguments presented, the Court finds and concludes that Nordstedt has not shown that the OCCA's adjudication of his ineffective assistance of appellate counsel claim resulted in a decision that is so obviously wrong that no fairminded jurists would agree with it.  The Court thus concludes that § 2254(d) bars relief and denies the petition as to ground two.

### CONCLUSION

Nordstedt has not made the necessary showings to obtain federal habeas relief under 28 U.S.C. §§ 2243 or 2254.  The Court therefore denies the petition as both grounds for relief raised therein.  The Court further concludes that no certificate of appealability shall be issued because reasonable jurists would not debate the correctness of this Court's assessment of grounds one and two.  28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS THEREFORE ORDERED** that:

1. the Clerk of Court shall note on the record the substitution of Margaret Green, Warden, in place of David Louthan as party respondent;

2. petitioner's request for an evidentiary hearing, as asserted in the petition for writ of habeas corpus (Dkt. 2 at 91) is **denied**;

3. the petition for writ of habeas corpus (Dkt. 2) is **denied**;

4. a certificate of appealability is **denied**;

5. a separate judgment shall be entered in this matter; and

6. the Clerk of Court shall mail a copy of this opinion and order and the judgment to Brandon W. Nordstedt, #748673, Mack Alford Correctional Center, PO Box 220, Stringtown, OK 74569.

**DATED** this 18th day of September, 2025.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE